182

*In the Matter of the Marriage of* JAMES DANIEL TITTER-
NESS, *Respondent, and* ROSE ANN TITTERNESS,
*Respondent*, THE DEPARTMENT OF SOCIAL
AND HEALTH SERVICES, *Appellant*.

*Christine O. Gregoire, Attorney General,* and *Kristin Prater Glenn, Assistant,* for appellant.

*Richard Lee Shaneyfelt,* for respondent.

BRIDGEWATER, J. — The State appeals the Superior Court's order quashing a lien placed against James Titterness' personal and real property by the Office of Support Enforcement (OSE) of the Washington State Department of Social and Health Services to secure spousal support due under an out-of-state divorce decree. We reverse.

In December 1983, James Daniel Titterness and Rose Ann Titterness were divorced in Johnson County, Kansas. James Titterness currently resides in Jefferson County, Washington; Rose Ann Titterness apparently resides in Kansas with their children. The divorce decree provided that James Titterness was to pay $600 per month for support of his three children. In addition, he was to pay spousal support in the amount of $650 per month for the first 4 months, $450 per month for the next 20 months, and $350 per month until December 1, 1987.

In September 1988, OSE received a referral from the State of Kansas requesting collection and enforcement of the support provisions of the Titterness divorce decree. At that time, James Titterness owed approximately $12,000 in back support. OSE did not transmit the referral to the Jefferson County Prosecutor's office pursuant to the former Uniform Reciprocal Enforcement of Support Act (URESA), RCW 26.21.[1] Instead, in February 1989, OSE enforced the Kansas support order administratively pursuant to RCW 74.20A.057 and WAC 388-

---

[1] The Legislature adopted URESA in 1951 "to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto." Laws of 1951, ch. 196, § 1. The 1951 URESA expired in July 1994, and was replaced by the Uniform Interstate Family Support Act (UIFSA). All citations to URESA are to former RCW 26.21 since this case arose while URESA was in effect.

14-260 by placing a lien for the amount of the support arrearage on all of James Titterness' property.

After the lien was filed, Rose Ann Titterness secured a Kansas court order increasing James Titterness' child support to $541 per month for the remaining two minor children, effective November 1, 1991. Ten months later, in August 1992, OSE filed a motion in the Superior Court for Jefferson County to increase James Titterness' child support obligation to $541 per month in accordance with the order of the Kansas court. In response, James Titterness filed a motion to quash the 1989 property lien, arguing that the lien was improper because OSE lacks statutory authority to enforce foreign spousal support orders.

The Superior Court increased James Titterness' child support obligation to $541 per month and quashed the 1989 property lien. OSE moved for reconsideration; the court denied the motion; OSE now appeals.

I

OSE argues that the trial court erred in ruling that it lacks authority to enforce foreign spousal support orders. It cites RCW 74.20, 74.20A, and 26.23, which authorize OSE to collect and enforce "support obligations" administratively. It contends that state law must be interpreted consistently with federal law requiring states to cooperate in the collection of spousal support. We agree.

Under Washington law, there are two basic methods of interstate collection and enforcement of support: private enforcement under the Uniform Enforcement of Foreign Judgments Act, RCW 6.36, and state assisted collection and enforcement. Under the latter, OSE may take administrative action under RCW 74.20, 74.20A, and WAC 388-14, or judicial action under URESA. *See generally* Richard L. Mull, Comment, *Administrative Adjudication of Child Support in Washington*, 12 Gonz. L. Rev. 518 (1977).

The administrative enforcement provisions identified above implement Washington's plan for collection and enforcement of support obligations required under Title IV-D

of the Social Security Act, 42 U.S.C. §§ 651-669 (1988 & Supp. V 1993). *See* WAC 388-14-010(1). Title IV-D establishes a child support enforcement program for "the purpose of enforcing the support obligations owed by absent parents to their children and the spouse (or former spouse) with whom such children are living". 42 U.S.C. § 651 (1988). Federal Aid to Families With Dependent Children (AFDC) funds are contingent upon the implementation of support obligation enforcement plans. 42 U.S.C. § 602(a)-(27) (1988). State plan requirements are set forth in § 654 of the Social Security Act as follows:

§ 654. **State plan for child and spousal support**

A State plan for child and spousal support must —

. . . .

(9) provide that the State will, . . . cooperate with any other State —

. . . .

(C) in securing compliance by an absent parent residing in such State (whether or not permanently) with an order issued by a court of competent jurisdiction against such parent for the support and maintenance of the child or children or the parent of such child or children with respect to whom aid is being provided under the plan of such other State, and

(D) in carrying out other functions required under a plan approved under this part;

42 U.S.C. § 654 (1988). Other functions required under the plan include:

[T]he child support collection or paternity determination services established under the plan shall be made available to any individual not otherwise eligible for such services . . . *including support collection services for the spouse (or former spouse) with whom the absent parent's child is living* (but only if a support obligation has been established with respect to such spouse, and only if the support obligation established with respect to the child is being enforced under the plan) . . ..

(Italics ours.) 42 U.S.C. § 654(6)(A) (1988).

In this case, the failure of the State to enforce the Kansas spousal support order would not be a violation of 42 U.S.C. § 654(9)(C) because there is no evidence that Rose Ann Titterness is receiving AFDC aid from Kansas. However, 42 U.S.C.

§ 654(6)(A) applies. Thus, the State must enforce the Kansas support order to receive federal AFDC funds.

We find that the State's administrative enforcement provisions comply with the spousal support enforcement requirement of Title IV-D. RCW 74.20.040(3) provides that the State

> may accept requests for support enforcement services from child support enforcement agencies in other states . . . and may take appropriate action to establish and enforce support obligations against the parent . . . owing a duty to pay support moneys.

WAC 388-14-020(21) defines "support enforcement services" as:

> [A]ll action the office [OSE] is required to perform under Title IV-D and state law. This includes, but is not limited to, action to establish, enforce, and collect child, spousal, and medical support obligations, and distribution [of] support moneys.

The State is authorized to take administrative action pursuant to RCW 74.20 and 74.20A, or use the Attorney General or prosecuting attorneys in a URESA action to meet its Title IV-D obligations. These alternatives are set forth in RCW 74.20.040(4):

> The department may take action to establish, enforce, and collect a support obligation, including performing related services, under this chapter and chapter 74.20A RCW, or through the attorney general or prosecuting attorney for action under chapter 26.09, 26.18, 26.20, 26.21, or 26.26 RCW or other appropriate statutes or the common law of this state.[2]

"Support obligation" is defined in RCW 74.20A.020(4)[3] as:

> [T]he obligation to provide for the necessary care, support, and maintenance, including medical expenses, of a dependent child *or other person* as required by statutes and the common law of this or another state.

---

[2]This statute and former RCW 26.21.020, which provided that URESA remedies were "in addition to and not in substitution for any other remedies", dispose of Mr. Titterness' argument that URESA was the exclusive method under which any foreign support obligation could have been enforced. Former RCW 26.21.020 (Laws of 1951, ch. 196, § 1).

[3]RCW 74.20.021 provides that the governing definitions are found in RCW 74.20A.020.

(Italics ours.) "Support moneys" include

> any moneys . . . paid to satisfy a support obligation whether denominated as child support, spouse support, alimony, maintenance, or any other such moneys . . ..

RCW 74.20A.020(9). Thus, RCW 74.20.040(3) unambiguously authorizes the State to take appropriate action to enforce foreign spousal support orders because such orders are "support obligations" within the meaning of the statute. "If the statute is unambiguous, its meaning is to be derived from the language of the statute alone." *Cherry v. Municipality of Metro. Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991). Moreover, if any ambiguity exists, it should be resolved in favor of compliance with Title IV-D of the Social Security Act because the Legislature made it the State's policy to comply with the Social Security Act in enacting the administrative enforcement provisions. RCW 74.20A.310 provides:

> In furtherance of the policy of the state to cooperate with the federal government in the administration of the child support enforcement program, the department may adopt such rules and regulations as may become necessary to entitle the state to participate in federal funds, unless such rules would be expressly prohibited by law. Any section or provision of law . . . susceptible to more than one construction shall be interpreted in favor of the construction most likely to comply with federal laws entitling the state to receive federal funds.

For these reasons, the trial court erred in ruling that OSE lacks authority to enforce foreign spousal support orders pursuant to RCW 74.20 and 74.20A.

## II

 James Titterness contends that the Superior Court improperly placed a lien against his property. We find the lien to be proper. RCW 74.20A authorizes the State to assert a lien on an obligor's personal and real property to secure a "support debt". RCW 74.20A.060(2). A "support debt" includes:

> any delinquent amount of support moneys which is due, owing, and unpaid under a superior court order . . . a debt for the payment of expenses for the reasonable or necessary care, support, and maintenance . . . of a dependent child or other person for whom a support obligation is owed . . ..

RCW 74.20A.020(10). "Superior court order" is defined in RCW 74.20A.020(5) as:

> [A]ny judgment, decree, or order of the superior court of the state of Washington, *or a court of comparable jurisdiction of another state, establishing the existence of a support obligation and ordering payment of a set or determinable amount of support moneys to satisfy the support obligation.*

(Italics ours.) Additionally, federal law requires the State to have in effect laws requiring the use of

> [p]rocedures under which liens are imposed against real and personal property for amounts of overdue support owed by an absent parent who resides or owns property in the State.

42 U.S.C. § 666(a)(4) (1988).

Thus, the court erred in quashing the lien on James Titterness' property because his spousal support arrearage is a "support debt" within the meaning of RCW 74.20A.020.

### III

James Titterness argues that OSE is collaterally estopped from enforcing the Kansas spousal support order because a new child support order was entered by the Kansas court in 1991 that made no provision for spousal maintenance.

■ The elements of collateral estoppel are:

> (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to . . . the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied.

*Malland v. Department of Retirement Sys.*, 103 Wn.2d 484, 489, 694 P.2d 16 (1985) (citing *Rains v. State*, 100 Wn.2d 660, 674 P.2d 165 (1983)). A court will not apply collateral estoppel if, because of ambiguity or indefiniteness, it is unclear whether the issue was previously determined. *Estate of Sly v. Linville*, 75 Wn. App. 431, 435, 878 P.2d 1241 (1994). The burden of proof is on the party asserting estoppel. *McDaniels v. Carlson*, 108 Wn.2d 299, 303, 738 P.2d 254 (1987).

James Titterness' argument is without merit because he did not meet his burden of showing that the Kansas court and the Washington trial court considered identical issues.

## IV

Finally, James Titterness argues that he is entitled to attorney fees under RAP 18.9(a) because the State's appeal is frivolous. The State's appeal obviously was not frivolous because it raised debatable issues of law and was successful. Thus, James Titterness is not entitled to attorney fees. *See Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187, *review denied*, 94 Wn.2d 1014 (1980).

We reverse and remand for proceedings consistent with this opinion.

HOUGHTON, A.C.J., and ALEXANDER, J. Pro Tem., concur.