[No. 67905-3.   En Banc.]
Argued January 13, 2000.     Decided April 20, 2000.

JOAN SCHWINDT, *as Assignee, Petitioner,* v.
COMMONWEALTH INSURANCE COMPANY, *Respondent.*

*Cutler & Nylander,* by *Thomas W. Hayton* and *Robert G. Nylander,* for petitioner.

*Hight Green & Yalowitz,* by *Scott D. Fletcher* and *William P. Hight,* for respondent.

*Charles Cooper Gordon, James R. Murray,* and *Jeffrey I. Tilden,* on behalf of Avista Utilities, The Boeing Company, Costco Companies, Puget Sound Energy, Weyerhaeuser Company, and Risk & Insurance Management Society, amici curiae.

IRELAND, J. — A building contractor, through its assignee, claims that its breach of contract action against its insurance company did not accrue until the insurance company rejected its claim for coverage. We agree and reverse summary judgment.

## FACTS

Pan Pacific Builders Ltd. (Pan Pacific) purchased a business risk insurance policy from Commonwealth Insurance Company (Commonwealth) to insure Pan Pacific during its

construction of the Bellingham Surgery Center (Center). The policy insured against *physical losses to property occurring between December 20, 1984, and January 31, 1986*, the anticipated period of construction.

The policy specifically excluded from coverage the "[c]ost of making good faulty or defective workmanship, material, construction or design," but the policy did cover "damage resulting from such faulty or defective workmanship, material, construction or design." Clerk's Papers (CP) at 153. The parties agree that the policy covers "radiating" damage only if it *occurred* during the policy period.

Pan Pacific abandoned construction prior to completing the tenant improvement work. In December 1991, the Center's owners, Joan Schwindt and Richard Jones, sued Pan Pacific alleging breach of contract, fraudulent mismanagement of corporate accounts and breach of fiduciary duties. As relevant to Pan Pacific's subsequent coverage claim against Commonwealth, the owners alleged only that "[c]ertain equipment and material, particularly mechanical equipment, doors and door hardware supplied by Pan Pacific" were "defective and below the standards required by the Contract." CP at 19-20.

Nearly two years later, in October 1993, Pan Pacific first notified Commonwealth that it intended to seek indemnification for this claim by the owners and urged Commonwealth to appear pursuant to a reservation of rights. In November, Commonwealth acknowledged receipt of Pan Pacific's notice and informed Pan Pacific that, although the policy did not require it to defend Pan Pacific in litigation, Commonwealth would undertake an investigation to determine if the policy provided coverage.

On January 20, 1994, when Commonwealth had failed to appear in the owners' action against Pan Pacific and had failed to acknowledge coverage, Pan Pacific filed this breach of contract action. Three months later the owners signed a settlement agreement with Pan Pacific, in which Pan Pacific assigned to the owners its rights under the pending lawsuit

against Commonwealth.[1] In November 1996, Commonwealth filed its answer formally denying coverage.

In October 1997, the trial court granted Commonwealth's motion for summary judgment concluding that Pan Pacific's action was barred by the six-year contract statute of limitations. Pan Pacific appealed contending that its cause of action did not accrue until Commonwealth rejected its claim for indemnification.

The court of appeals held that the cause of action accrued when the damage *occurred. Schwindt v. Commonwealth Ins. Co.*, 94 Wn. App. 504, 508-09, 972 P.2d 570 (1999). The court of appeals relied upon cases holding that, for property insurance *coverage* purposes, the time of an "occurrence" is the date the property sustains damage. *See Schwindt*, 94 Wn. App. at 508 n.7 (citing inter alia, *Villella v. Public Employees Mut. Ins. Co.*, 106 Wn.2d 806, 811, 725 P.2d 957 (1986) and *Cope Constr. Co. v. American Home Assurance Co.*, 28 Wn. App. 38, 44, 622 P.2d 395 (1980)).

## ISSUES

We are asked to decide (1) whether Pan Pacific's cause of action against Commonwealth accrued more than six years before Pan Pacific filed suit; and (2) if Pan Pacific's cause of action were timely, whether summary judgment dismissal would have been proper on the grounds of estoppel.

## I. ACCRUAL

Pan Pacific contends that an insured's cause of action against its insurer for failure to provide coverage does not accrue until the insurer improperly denies coverage. Appellant's Br. at 10-12 (citing *Safeco Ins. Co. v. Barcom*, 112 Wn.2d 575, 773 P.2d 56 (1989) and *Bush v. Safeco Ins. Co. of Am.*, 23 Wn. App. 327, 596 P.2d 1357 (1979)). Com-

---

[1] Recognizing this assignment, we nonetheless refer to Pan Pacific as the claimant.

352

monwealth contends that, in the context of first party property insurance, the limitations period begins to run on the date the loss occurs. Resp't's Br. at 7, 9 (citing *Simms v. Allstate Ins. Co.*, 27 Wn. App. 872, 875, 621 P.2d 155 (1980)); Resp't's Supplemental Br. at 1, 8-11 (citing RCW 48.18.200(1)(c); RCW 48.18.120(1); WAC 284-20-010(3)).

Commonwealth further contends that the *Simms* holding is consistent with the general rule that a party cannot unilaterally and indefinitely extend a limitations period by delaying satisfaction of a precondition to filing suit. Resp't's Br. at 9-12 (citing *Edison Oyster Co. v. Pioneer Oyster Co.*, 22 Wn.2d 616, 626-27, 157 P.2d 302 (1945) and *Young v. City of Seattle*, 30 Wn.2d 357, 363, 191 P.2d 273 3 A.L.R.2D 704 (1948)). In response, Pan Pacific contends that courts adequately protect insurers from tardy coverage claims by applying equitable principles rather than the statute of limitations. For this purpose, Pan Pacific acknowledges that the date the insured discovers its loss is relevant, but claims that there are disputed issues of material fact regarding when Pan Pacific discovered "radiating" damage.

Amici[2] claim that the court of appeals failed to recognize the distinctions between occurrence policies like the one involved here, and claims-made policies, and, thus, its ruling transforms all occurrence policies into claims-made policies with six-year reporting periods.[3]

The parties agree that the six-year contract statute of

---

[2] Avista Utilities, The Boeing Company, Costco Companies, Puget Sound Energy, Weyerhaeuser Company and Risk and Insurance Management Society.

[3] Amici rely upon a lengthy discussion regarding the distinctions between "occurrence" policies and "claims-made" policies in *Safeco Title Ins. Co. v. Gannon*, 54 Wn. App. 330, 336-39, 774 P.2d 30 (1989). In sum, an occurrence policy provides coverage for the insured's negligence, no matter when damage is discovered or when the insurer is notified, so long as the damage occurred within the policy period and the notification is within a reasonable time. *Gannon*, 54 Wn. App. at 337-38. On the other hand, coverage under a "claims-made" policy depends upon the claim being made and reported to the insurer during the policy period. *Gannon*, 54 Wn. App. at 338. "Claims-made" policies permit insurers to more accurately predict their risks, which theoretically results in lower premiums than is necessary for "occurrence" policies. *Gannon*, 54 Wn. App. at 337.

limitations is the proper limitations period. *See* RCW 4.16.040 (an action upon a written contract must be commenced within six years). Thus, the central issue in this case is: what event triggers the running of this six-year period?

This Court has previously found that the contract statute of limitations begins to run against an insured on the date the insurer breaches the contract of insurance. *Barcom*, 112 Wn.2d at 583; *see also Denny's Restaurants, Inc. v. Security Union Title Ins. Co.*, 71 Wn. App. 194, 215, 859 P.2d 619 (1993) (a cause of action generally accrues when wrongful act takes place); *Bush*, 23 Wn. App. at 329 (a cause of action generally accrues for statute of limitations purposes when a party has a right to apply to court for relief). No justiciable controversy exists under a contract until a breach occurs. *Barcom*, 112 Wn.2d at 583.

Here, assuming Commonwealth's policy provides coverage for the damages claimed by Pan Pacific, Commonwealth breached the insurance contract when it denied coverage. Thus, the statute of limitations began to run when Commonwealth wrongfully denied coverage; until such time, Commonwealth had not committed a wrongful act. *See Barcom*, 112 Wn.2d at 583; *Denny's*, 71 Wn. App. at 215.

The denial of coverage here happened either in November 1993, when Commonwealth acknowledged receipt of Pan Pacific's claim but did not acknowledge coverage, or in November 1996, when Commonwealth formally denied coverage. Even if we assume the limitations period began running on the earlier date and, therefore, expired in November 1999, Pan Pacific's action was timely because it was filed over five years earlier in January 1994.

Although Commonwealth admits that language in *Barcom* supports Pan Pacific's position, it claims that *Barcom* does not apply because (1) the *Barcom* insurer, unlike Commonwealth, caused the statute of limitations to lapse through its own inaction; (2) *Barcom* involved the Uninsured Motorist (UIM) provisions of automobile liability

policies rather than a first party builder's risk policy; and (3) the *Barcom* insureds notified their insurers promptly after their losses occurred.

The major issue in *Barcom* was whether the tort or contract statute of limitations applied to the insureds' claims for benefits. *Barcom*, 112 Wn.2d at 579. The policies stated that, to be entitled to UIM coverage, the insured must first be "legally entitled to recover" from the actual tortfeasor. *Barcom*, 112 Wn.2d at 580.

The *Barcom* court found that the insurer's obligation to its insured stemmed from the contract terms and that the "legally entitled" language did not operate to displace the six-year statute of limitations otherwise applicable to all written contracts. 112 Wn.2d at 579. Then, applying the six-year contract statute of limitations, *which accrued in one case when the insurer refused to arbitrate, and in the other case when the insurer denied coverage*, the *Barcom* court found that neither of the insureds' claims were time barred. 112 Wn.2d at 583-84. Thus, contrary to Commonwealth's assertion, the Barcom *insurer* did not cause the statute of limitations to lapse through its own inaction.

Nothing in *Barcom* supports Commonwealth's position that the triggering event for the accrual of an insured's breach of contract action against its insurer differs depending upon whether the policy involved is "first party" or "third party" insurance. Contrary to Commonwealth's position, this Court has characterized the insurance involved in *Barcom* as "first party" coverage because it indemnified "against the insured's losses caused by the negligence of another" rather than "against losses to another caused by the insured's own negligence." *See Rones v. Safeco Ins. Co. of Am.*, 119 Wn.2d 650, 655, 835 P.2d 1036 (1992).

Finally, while it is true that the *Barcom* court specifically noted that each insured notified the insurer of its claim within a short time after the accident, the court's purpose in noting this fact was to indicate the absence of prejudice to the insurer. *See Barcom*, 112 Wn.2d at 583-84. This fact had no bearing upon the event that commenced the run-

ning of the contract statute of limitations. *See Barcom,* 112 Wn.2d at 583.

Relying on RCW 48.18.200(1)(c),[4] RCW 48.18.120(1),[5] and WAC 284-20-010(3),[6] Commonwealth claims that the Legislature has established "date of loss" as the triggering event for the running of the *statutory* limitations period when first party property insurance is involved. We find that these enactments do not support Commonwealth's position. RCW 48.18.200(1)(c) relates only to express suit limitations clauses and not the contract statute of limitations. A fire policy that does not include a suit limitations provision is *more* favorable to the insured than the "standard fire policy" and, thus, the absence of such a provision in the policy here does not violate WAC 284-20-010(3).

Commonwealth's reliance on *Simms* is also misplaced. There the insured's policy contained an express suit limitations provision stating:

"No suit or action on this policy for the recovery of any claim

---

[4]RCW 48.18.200(1)(c) prohibits suit limitations clauses in insurance policies that limit a right of action against an insurer

to a period of less than one year from the time when the cause of action accrues in connection with all insurances other than property and marine and transportation insurances. In contracts of property insurance, or of marine and transportation insurance, such limitation shall not be to a period of less than one year from the date of the loss.

RCW 48.18.200(1)(c)

[5]RCW 48.18.120(1) authorizes the insurance commissioner to promulgate regulations as necessary to "effect reasonable uniformity in all basic contracts of fire insurance. . . ."

[6]WAC 284-20-010(3), which was promulgated pursuant to RCW 48.18.120(1), provides in pertinent part:

Except for the provisions of the next succeeding three paragraphs, no company shall issue any basic contract of fire insurance covering property or interest therein in this state other than on the form known as the 1943 New York Standard Fire Insurance Policy, herein referred to as the "standard fire policy"[.]

WAC 284-20-010(3). The "standard fire policy" contains a one-year suit limitations clause. Subparagraph (c) of WAC 284-20-010(3), however, permits an alternative form that provides "terms, conditions and coverages *not less favorable to the insured* than the 'standard fire policy.' " WAC 284-20-010(3)(c) (emphasis added).

shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

*Simms*, 27 Wn. App. at 873. The insured argued that "inception of the loss" should be construed to be the date the insurance company denied liability. *Simms*, 27 Wn. App. at 874-75. Relying on RCW 48.18.200(1)(c)'s distinctions between property, marine and transportation insurances, and all other insurances, the *Simms* court disagreed and found that the *contractual* limitations period began to run on the date the loss occurred. 27 Wn. App. at 875. Nonetheless, the *Simms* court recognized that, for purposes of the commencement of the *statute* of limitation, an insured's cause of action on an insurance contract generally accrues when a party has a right to apply to court for relief. 27 Wn. App. at 875.

Commonwealth argues that "the only substantive difference" between Simm's claims and Pan Pacific's claims is that Simms had one year to present his claim and Pan Pacific had the full six-year statutory period. In fact, Simms' policy had a contractual suit limitations period that not only decreased the *length* of the statutory limitations period from six years to one but specifically designated "inception of the loss" as the *event* that would commence the running of the limitations period. Here, Commonwealth's policy did not contain a similar contractual limitations period; thus, the *Simms* holding is not applicable.

The court of appeals improperly relied upon *Villella* and *Cope. Villella* involved a question of coverage rather than the statute of limitations, 106 Wn.2d at 807, and *Cope* involved a suit limitations clause similar to the one in *Simms*, 28 Wn. App. at 42. Thus, neither of these cases is applicable to the issue here.

Commonwealth claims that accrual at occurrence is fair and reasonable when "solely first party insurance" is involved because a first party insured is not vulnerable to the timing of a third party's instigation of litigation. We

disagree. Contrary to Commonwealth's reasoning, Pan Pacific was in fact vulnerable to the timing of the third party owners' instigation of litigation. Until such time, Pan Pacific had no basis to make a claim for coverage much less sue Commonwealth for breach of its contract of insurance.

█ Contrary to Commonwealth's further suggestion, the rule relied upon here does not allow the insured to unilaterally and indefinitely extend the time in which it can bring an action against its insurer. When an insured breaches an insurance policy's cooperation clause, the insurer will be relieved of its duty to provide coverage if it can prove that the insured's acts or omissions caused actual and substantial prejudice. *Pederson's Fryer Farms, Inc. v. Transamerica Ins. Co.*, 83 Wn. App. 432, 437-38, 922 P.2d 126 (1996); *Oregon Auto. Ins. Co. v. Salzberg*, 85 Wn.2d 372, 376-77, 535 P.2d 816 (1975). As the *Barcom* court recognized, "under the terms of a contract of insurance, some action by the insured that prejudices the insurer's rights might in fact eliminate coverage well before the applicable statute of limitation were actually to have run." 112 Wn.2d at 583.

Additionally, in cases where the insured's claim is based on its liability to a third party, as is the situation here, the statute of limitations applicable to the third party's claim against the insured will effectively operate to protect insurers from indefinite exposure to claims.

In any event, the cases that Commonwealth relies upon for its policy arguments, *Edison Oyster* and *Young*, are inapplicable. In *Edison Oyster*, an oyster company had a right of action in replevin to recover its oysters immediately upon discovery that the oysters had drifted onto adjoining tideland; before filing suit, however, the oyster company needed to first make a demand upon the adjoining tideland owner for return of the oysters. 22 Wn.2d at 626. In *Young*, the plaintiffs had a right of action against a municipal corporation immediately after an accident involving a passenger bus owned and operated by the city; but before filing suit, the plaintiffs needed to first present their claim to the city. 30 Wn.2d at 359-60. In both of these cases, unlike

here, there was no question regarding when the plaintiffs' causes of action had accrued. Rather, the issue was whether the plaintiffs' delays in performing the procedural prerequisites to filing suit could extend the statute of limitations. *Young*, 30 Wn.2d at 361-64; *Edison Oyster*, 22 Wn.2d at 626-27.

Here, Pan Pacific's cause of action did not accrue until Commonwealth denied coverage. Thus, contrary to Commonwealth's argument, Pan Pacific's giving of notice to Commonwealth is not analogous to the procedural prerequisites to filing suit in *Edison Oyster* and *Young*.

We agree with Commonwealth that the rule followed here could sometimes allow insureds to bring coverage claims long after losses to property have occurred. However, insurance companies have the opportunity to limit their exposure by including express suit limitations provisions that comply with RCW 48.18.200(1)(c). *See Safeco Title Ins. Co. v. Gannon*, 54 Wn. App. 330, 337, 774 P.2d 30 (1989). Presumably, when insurance companies do not include suit limitations provisions and instead provide occurrence policies like the one here, they are aware that the risk is "by its very nature open-ended," and thus charge higher premiums to account for the increased risk. *Gannon*, 54 Wn. App. at 337-38 (citing 7A JOHN ALAN APPLEMAN, INSURANCE LAW AND PRACTICE 4504.01 (Supp. 1988) and *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So. 2d 512, 515-16, 37 A.L.R.4TH 374 (Fla. 1983)).

■ From a public policy standpoint, we agree with Pan Pacific that insurers are adequately protected from tardy claims by judicial application of equitable principles rather than the statute of limitations. Although public policy supports the fair treatment of insurers, this concern is secondary to the protection of insureds and innocent third parties. As the *Salzberg* court recognized:

> [I]nsurance policies . . . are simply unlike traditional contracts, i.e., they are not purely private affairs but abound with public policy considerations, one of which is that the risk-spreading theory of such policies should operate to afford to

affect members of the public—frequently innocent third persons—the maximum protection possible consonant with fairness to the insurer. It is manifest that this public policy consideration would be diminished, discounted, or denied if the insurer were relieved of its responsibilities although it is not prejudiced by the insured's actions or conduct in regard to its investigation or presentation and defense of the tort case. Such relief, absent a showing of prejudice, would be tantamount to a questionable windfall for the insurer at the expense of the public.

85 Wn.2d at 376-77 (citation omitted). Whether an insurance company has been actually and substantially prejudiced by an insured's delay in making a claim is normally a question for the trier of fact. *See Salzberg*, 85 Wn.2d at 377.

Pan Pacific claims that there is disputed evidence regarding when it knew that defective materials and/or workmanship had caused "radiating" damage, and that such date of discovery is relevant for purposes of deciding whether an insurer is prejudiced by an insured's delay in giving notice of a claim. We agree that for this purpose the date of discovery is relevant.[7] However, we decline to make a prejudice determination based on the record before this Court. Commonwealth did not base its summary judgment motion on prejudice and thus never had reason or opportunity to present evidence proving actual prejudice. Because we conclude that Pan Pacific's suit was timely, Commonwealth should have the opportunity on remand to establish that Pan Pacific's delay in giving notice violated

---

[7]Cases discussing the prejudice determination indicate that the following factors are relevant: (1) when the insured discovered its loss; (2) whether the delay in making a claim left the insurer without an opportunity to pursue a claim against the tortfeasor, to adequately defend the insured in an underlying action brought by a third party, or to pursue subrogation claims against other entities; (3) whether the insured destroyed evidence relevant to a policy exclusion; and (4) whether the insured failed to control remediation costs. *See, e.g., Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.*, 50 Wn.2d 443, 452-53, 313 P.2d 347 (1957); *Pederson's Fryer Farms*, 83 Wn. App. at 439-40; *Felice v. St. Paul Fire & Marine Ins. Co.*, 42 Wn. App. 352, 358-60, 711 P.2d 1066 (1985); *Thompson v. Grange Ins. Ass'n*, 34 Wn. App. 151, 163-64, 660 P.2d 307 (1983); *Pulse v. Northwest Farm Bureau Ins. Co.*, 18 Wn. App. 59, 61, 566 P.2d 577 (1977).

its duty of cooperation *and* resulted in actual and substantial prejudice. *Pederson's Fryer Farms*, 83 Wn. App. at 437-38.

## II. ESTOPPEL

Commonweath argues in effect that Pan Pacific is estopped from asserting coverage under the policy based on the owners' admission that their initial complaint did not state a claim for radiating damages. After Pan Pacific filed its suit against Commonwealth, the owners amended their complaint against Pan Pacific. *See* Ex. A to Resp't's Br. Although the allegation regarding defective materials remained the same as in the original complaint, the owners contended that their amended complaint added claims of "radiating" damage that were not originally included.

Commonwealth contends that, as a matter of law, Pan Pacific never had a valid claim for coverage because (1) the owners admitted that their original complaint against Pan Pacific did not state a claim for covered "radiating" damages; (2) the owners' revised claim is identical to the original claim; and (3) in any event, the revised complaint against Pan Pacific was not introduced below.

█ Commonwealth did not argue this position in its pleadings and cites no authority to this Court. Thus, this is not a proper ground for summary judgment. *See Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 344, 883 P.2d 1383 (1994) (a reviewing court may sustain a trial court's summary judgment ruling on any grounds *established by the pleadings* and supported by the record).

In any event, neither collateral nor equitable estoppel applies here. Collateral estoppel does not apply because coverage under the policy was not an issue in the suit between the owners and Pan Pacific and because there was never a final judgment on the merits. *See In re Marriage of Titterness*, 77 Wn. App. 182, 188, 890 P.2d 32 (1995). Equitable estoppel does not apply because Commonwealth never "reasonably relied" upon the owners' admission such that

it would be injured by Pan Pacific's repudiation of that admission. *See Department of Ecology v. Theodoratus*, 135 Wn.2d 582, 599, 957 P.2d 1241 (1998).

Finally, the issue of whether or not an insurance policy provides coverage for alleged damages is a contract interpretation issue and does not depend upon the allegations or lack of allegations in a third party's complaint. Whether Pan Pacific ultimately assumed responsibility for covered damages in its settlement agreement with the owners has not been litigated. Thus, summary judgment on the grounds urged by Commonwealth would not have been proper.

## CONCLUSION

We hold that, in the absence of an express contractual limitations period, a breach of contract action against an insurance company for failure to provide coverage accrues when the insurance company breaches the contract by wrongfully denying coverage. Because the statute of limitations period had not expired when Pan Pacific filed suit, we reverse the court of appeals and remand for further proceedings consistent with this opinion. Whether Pan Pacific violated its duty of cooperation and whether such violation resulted in actual and substantial prejudice to Commonwealth will be issues for the trier of fact. *See Salzberg*, 85 Wn.2d at 377.

GUY, C.J., and SMITH, JOHNSON, MADSEN, ALEXANDER, TALMADGE, SANDERS, and BRIDGE, JJ., concur.