

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| ALBERT and MARGARET FIGARO, husband and wife, | ) ) ) | No. 73545-4-I |
| Appellants, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| CITY OF BELLINGHAM, a Washington municipal corporation, | ) ) ) ) | |
| Respondent. | ) | FILED: June 27, 2016 |

SCHINDLER, J. — Albert and Margaret Figaro (collectively, Figaro) own a vacant lot on Yew Street Road in Whatcom County. Figaro appeals summary judgment dismissal of the breach of contract claim against the city of Bellingham . We affirm.

## FACTS

In 1975, Figaro purchased a house located on Yew Street Road in Whatcom County, 2444 Yew Street Road, Whatcom County tax parcel number 370304030483. In 1987, Figaro purchased a vacant lot on Yew Street Road, 2454 Yew Street Road, Whatcom County tax parcel number 370304030498.

In 1979, the city of Bellingham (City) adopted Ordinance 8728. Ordinance 8728 created a water service zone outside the City limits that included Yew Street Road. The

ordinance allowed property owners within the service zone to apply for water service from the City but reserved the right to grant or deny a request based on the adopted criteria. Ordinance 8728 states, in pertinent part:

> Section 3. <u>Water Service Zone</u>
> The City Council hereby establishes a "Water Service Zone" outside the corporate limits of the city, within which water distribution service may be obtained directly from the city and main extensions made to the city's water distribution system, pursuant to the terms and conditions provided herein and within all other applicable statutes, ordinances or city regulations including necessary and appropriate utility related practices of the City's Department of Public Works. The said "Water Service Zone" is hereby identified as such on the map, a copy of which is attached hereto, marked Exhibit "A" and made a part hereof as if fully set forth herein.

In early 2000, the City Public Works Department (Public Works) requested an appropriation to build a sewer line "in conjunction with Whatcom County's Yew Street Road widening project" and to establish a sewer service zone for "the abutting properties that will benefit from the utility." The City Council appropriated funds for the project. The City installed a water main in the county right-of-way on Yew Street Road during the county's road construction project. In late September 2000, the City issued a Public Works permit to Figaro to install a water service stub on the vacant lot to connect to the water main in the Yew Street Road right-of-way. Figaro paid a fee of $480 to the City to obtain the permit. The "Project Description" for the permit states, "INSTALL 3/4" WATER SERVICE FOR FUTURE USE. WATER IS BEING INSTALLED DURING YEW ST ROAD CONSTRUCTION." In September 2002, Figaro paid $4,994 in latecomer fees for water service to his residence located at 2444 Yew Street Road. Figaro did not pay the latecomer fees for water service to his vacant lot.

2

At the City Council meeting in October 2000, a Public Works utility engineer addressed the appropriation to build the sewer line as part of the county's Yew Street Road widening project. The utility engineer told the council, "About 80 percent of the properties in the proposed extension are current City water customers with an existing single family residence." The engineer stated that if the council approved the funds to install a sewer service line and create a sewer service zone, current homeowners "who are now paying for City water . . . will request a sewer permit from the City, pay the appropriate fees and latecomer fees and then can hook up to the sanitary sewer utility." The utility engineer noted, "There are some platted lots that front on Yew Street that do not have structures at this time," and the City planned to install sewer stubs "for vacant properties to avoid tearing up the road at a later date."

In December 2000, the City adopted an ordinance to appropriate money to install a sewer line in conjunction with the Whatcom County Yew Street Road widening project and establish a sewer service zone, Ordinance 2000-12-087. Ordinance 2000-12-087 adopts "criteria for property owners within the zone to request sewer service from the City." A property owner proposing new development had to submit an application with detailed plans and pay the applicable fees. If the City approved the application, the property owner and the City would execute a written contract.

In April 2002, the City adopted a moratorium on the extension of water and sewer service outside the City limits. The purpose of the moratorium is described as follows:

a.  . . . [E]valuat[e] in a comprehensive way, issues and opportunities for managing urban growth and development;
b.  Initiate development of an annexation plan for Bellingham's UGA [(urban growth area)] . . . ; and
c.  . . . [R]eview utility extension and annexation policies as part of the comprehensive plan update and five-year review of Bellingham's

Urban Growth Area which has already begun and is projected to be completed in 2003.

In June 2004, the City Council adopted a policy requiring property owners outside the City and in the urban growth area to annex prior to approval of utility services.

On March 21, 2006, the City Council adopted Ordinance 2006-03-026. Ordinance 2006-03-026 repealed Ordinance 8728 and the water service zone for Yew Street Road. The council found Ordinance 8728 "is inconsistent with the GMA [(Growth Management Act, chapter 36.70A RCW)], applicable law and regulation," and the policy that requires annexation before approval of "utility service extensions outside the City's corporate limits." However, Ordinance 2006-03-026 expressly exempts utility service "in existence" on the effective date of the ordinance. Ordinance 2006-03-026 defines "in existence" as follows:

> For purposes of this Ordinance, "in existence" means the property is currently receiving service and/or shall have a fully signed, valid, and recorded utility service zone agreement. . . . All future water and sewer utility service zones within the UGA will only be created pursuant to applicable law, regulation, and policy, including BMC [(Bellingham Municipal Code)] Chapter 15.36 (as currently enacted or hereafter modified) and City Council policy of June 14, 2004. . . . City Council does not intend for the continuation of these existing services to be modified, expanded or extended.

In June 2006, the City Council adopted Ordinance 2006-06-064 clarifying the meaning of "in existence:"

> i.    For purposes of this Ordinance, "in existence" means one or more of the following:  (1) the property is currently receiving service; (2) the property owner shall have a fully signed, valid, and recorded utility service zone agreement on or before March 21, 2006; [or] (3) the property owner has written documentation dated on or before March 21, 2006 demonstrating the City's intent to serve the property . . . .

4

     ii.   Those properties that meet the foregoing definition of "in existence" but do not have an executed utility service zone agreement shall enter into such a contract and pay any applicable fees on or before one year after this Ordinance's effective date. If a utility service zone agreement is not fully executed by the foregoing date, the property will no longer be considered "in existence" for purposes of this Ordinance and service will not be provided.

In late October or early November 2007, Figaro submitted a request for water service to Public Works for the vacant lot located at 2454 Yew Street Road. On November 15, Public Works Development Manager Brent Baldwin denied the request. The letter states "all information that we have on file" indicates water service and payment for the latecomers fee was only for Figaro's residence at 2444 Yew Street Road. In response to Figaro's belief that he paid a latecomers assessment on the vacant property he owned, the letter states, "[W]e can take your request to the Council for their determination" but "staff would not be able to support your request for water service."

On November 27, Figaro requested a public hearing before the City Council on his request. Figaro claimed he was entitled to water service for the vacant lot because "[w]e believed all this time that we had paid for the latecomers fee but were mistaken. We confused this payment with the one paid on our home/property at 2444 Yew Street Road." Figaro also states the payment of the permit fee in September 2000 to install a water service stub on the vacant lot established his intent to obtain water service.

> In September of 2000 we paid $480 (Please see receipt Case# PBW2000-01210) to the City of Bellingham Building Services Division for installation of ¾" copper pipe to the 2454 Yew Street Road address our intention all along being that these two lots would have water service.

5

Public Works submitted a report addressing Figaro's request to the City to provide water service to the vacant lot. The Public Works "Analysis of Application Information" states:

> The applicant has two lots separated by the Democrat Street right of way. The southern property located at 2444 Yew Street Road is developed with a single family home. The northern property, 2454 Yew Street Road, is vacant.
>
> The attached receipt for $4,994.00 was received in payment for the associated latecomers assessment against the developed property at 2444 Yew Street Road. This is evidenced by the "Partial Release of Latecomers Obligation" dated October 7, 2002.
>
> The attached receipt for $480.00 was received for the installation of a ¾" copper only side service to the vacant lot at 2454 Yew Street Road. This side service was installed at the time of the Yew Street Road construction project by Whatcom County with the intent of providing future water availability to the lot and to preserve the integrity of the road by protecting against future cuts into the roadway. There is no evidence that any other fees were paid to legally activate the water service (meter charge, system development charges).
>
> Public Works recommended denying the request for water service:
>
> - The request is for a service to the applicant's property without a specific proposal for the property.
> - Without annexation, and with the provision of utility services, urban development could occur without the full range of urban services.
> - The request is not consistent with the Bellingham Comprehensive Plan policies: LU -120 and LU -122
> - The request does not meet the City Council's "June 14, 2004 Adopted Revisions to City Council Policy Regarding Utility Service Zone Extensions". Annexation should occur prior to the extension of urban services.
> - The request does not meet the criteria in Bellingham Municipal Code 15.36.110;
>
> Staff does not find a compelling reason to recommend Council set aside City policy and grant approval of this request.

The City Council considered Figaro's request for water service and the analysis and recommendation of Public Works at the public hearing on March 3, 2008. The City Council unanimously voted to deny Figaro's application for the extension of municipal water service to the vacant lot located at 2454 Yew Street Road. Figaro did not appeal the decision to deny his request to provide water service to his vacant lot on Yew Street Road.

Three years later, the City Council adopted Ordinance 2011-05-025. The ordinance repealed the ordinance that created a sewer service zone for the Yew Street Road area, Ordinance 2000-12-087.[1] Ordinance 2011-05-025 codified the City policy for providing municipal water and sewer service to properties outside City limits and in the urban growth area. Ordinance 2011-05-025 states, "The City will provide new direct retail water and/or sewer service to areas within the City's Urban Growth Area only after the areas annex to the City."

> The City will not modify, extend, or expand direct retail water and/or sewer service in the City's Urban Growth Area without annexation unless the City Council determines that such modification, extension, or expansion is necessary to protect basic public health and safety and the environment.

On July 22, 2014, Figaro requested water and sewer service from the City for his vacant lot on Yew Street Road. The letter states Figaro "bring[s] this new request under changed conditions." Figaro attached a "Preliminary Layout" for an on-site septic system and private well on the vacant lot and a letter dated July 30, 2013 from the

---

[1] Ordinance 2011-05-025 states, in pertinent part:
The Growth Management Act ("GMA") prohibits the extension or expansion of urban governmental services, including water and sewer services, in rural areas except in very limited circumstances that are necessary to protect basic public health and safety and the environment and which do not permit urban development. City water and sewer service zones that authorize the City to extend or expand City urban water and sewer service to areas outside the City's UGA are inconsistent with the GMA.

Whatcom County Health Department. The July 30, 2013 letter states:

> The Whatcom County Health Department (WCHD) has reviewed the conceptual on-site sewage system (OSS) and drinking water well location site plan completed by David Mitchell dated 3/14/13 for the property referenced above. For new subdivisions, Whatcom County Code (WCC) 24.05 requires a minimum lot size of 1 acre for an OSS and a drinking water well to be sited on a parcel. The Figaro property, which is approximately 11,365 sq.ft. would typically be developed utilizing public water and public sewer. As a result, applying Whatcom County development codes for the utilization of an OSS and private well is very difficult for lots like the Figaro's property.
>
> Under WCC 24.05 it is possible for WCHD to permit OSS on legal lots of record that were created prior to the effective date of the code, if all other code requirements can be met besides minimum lot size. Based on the site plan and assumptions made by the Figaro's OSS designer, David Mitchell, it appears that an OSS could be permitted for the property. However, if public water is not available from the City of Bellingham, siting a well on the property becomes very difficult due to the OSS setback requirements. In order to meet the setback to the OSS, the well must be sited 5' from the east property line. If the Figaro's applied for water availability with the well location as shown, WCHD would not be able to approve the well location at this time due to the following:
>
> 1. There is no information regarding other potential sources of contamination within the 100' sanitary control area that extends onto properties not owned by the Figaros.
> 2. The Figaros would need to obtain restrictive covenants for several properties within the 100' well sanitary control area that are not owned by them.
> 3. The well site does not appear to meet the setback to Democrat Road right-of-way.

On September 17, 2014, Public Works denied the request. Figaro appealed the denial. The City Council unanimously denied the request.

> The property is outside of the City but in the Urban Growth Area. Requests for water service at this property have previously been denied based on council directed policy with regard to not extending water and sewer lines outside the city limits until an area has been annexed unless it meets certain conditions of health and safety. This property is a vacant lot.

On November 17, Figaro filed a complaint against the City for breach of contract, declaratory judgment, and injunctive relief. Figaro alleged the vacant lot is in the "Urban Growth Area ('UGA') for the City" and a "City water and sewer main run down Yew Street Road," and the City placed "service stubs on the Property for the purpose of serving the Property." Figaro alleged the City "entered into a written and/or oral contract . . . to provide water and sewer service" and "breached this contract by refusing to provide water and/or sewer service to the Property." Figaro claimed he "previously applied/petitioned to be annexed into the City of Bellingham and the City denied such annexation," and Whatcom County informed Figaro he "cannot have both a well and septic on the Property."

The City filed an answer. The City admitted that there were water and sewer service stubs on the vacant lot and that Figaro "paid $480.00 towards the installation of a water service stub." The City denied that it holds itself out as a public utility willing to supply municipal water and sewer service outside the City and denied that it had a contract with Figaro for either water or sewer service. The City asserted a number of affirmative defenses including statute of limitations.

The parties filed cross motions for summary judgment. Figaro argued he was entitled to water and sewer service because the City holds itself out as the exclusive provider of water and sewer service for properties located on Yew Street Road. Figaro claimed that by extending water and sewer stubs to the vacant lot, the City "engaged in a course of dealing" that manifested an intent to provide water and sewer service.

In support, Figaro submitted a declaration. Figaro states that in 2000, he paid $480 to obtain a Public Works permit from the City "for water service to the Property" and obtained an account number.

> About the time the permit was issued, I spoke with an employee of the City at City Hall about services to the Property. She issued me an account number at that time. It is Account #026030. A copy of the paper I have kept in my wallet since that time is attached as Exhibit B to this declaration. The original was a 2 - sided piece of paper. This paper has a map to City Hall on the back side.
>
> . . . .
> . . . I am also aware, and have been for many years that the Property contained a sewer service stub that was connected to the sewer main. This sewer service stub is located within the boundary of the Property, not in the City right-of-way. This was installed with my consent, and the understanding that the Property would be served by City sewer service in the future.

The City asserted there was no evidence of an implied contract to provide sewer service. The City pointed out that Whatcom County, not the City, installed the sewer service stub on the property in 2000 "to avoid tearing up the road at a later date." The City argued the undisputed facts established it did not hold itself out as willing to provide service to all property owners in the Yew Street Road area. The City cited the City code that states the City will not direct retail water or sewer outside the City limits and in the urban growth area without annexation unless necessary to protect public health and safety.[2] The City argued Figaro erroneously equated the permit to install a water service stub for future use with a contract. Even if the six-year statute of limitations applied, the City asserted the statute of limitations barred the breach of a contract claim to provide water service.

The City submitted a number of declarations in support of its motion for summary judgment including the declaration of Public Works Development Manager Brent

---

[2] See BMC 15.36.010(B).

Baldwin, City Planner Moshe Quinn, and Whatcom County Health Department employee Mike Kim.

City Planner Quinn states the City "has not received and reviewed any annexation petitions that include the Figaros' property." Whatcom County Health Department employee Kim states Figaro submitted a conceptual on-site septic and well location site plan but the file does not include an application for a septic or well, or an application "for a request for waiver from state regulations," or "any applications for a variance" for water program requirements.

At oral argument, Figaro's attorney conceded the breach of contract claim for water service was barred by the statute of limitations but asked the court to toll the statute of limitations.

> So let's look at the equities here. The Court had the authority under the facts here to find in my client's favor. I don't have specific rebuttal to the strict interpretation of the statute of limitations. I can't make an argument that the discovery rules should be applied unless I am doing it under CR 11 to expand case law. But even if it did, I don't necessarily disagree with what the City has said.

The court granted the City's motion for summary judgment. The court dismissed the lawsuit and awarded costs to the City as the prevailing party under RCW 4.84.010. Figaro appeals.

## ANALYSIS

Figaro contends the court erred in dismissing the breach of contract claim against the City. Figaro asserts the undisputed facts establish an implied contract to provide water and sewer service to the vacant lot on Yew Street Road.[3]

---

[3] Figaro also filed a land use petition under the Land Use Petition Act (LUPA), chapter 36.70C RCW. Figaro does not appeal dismissal of the LUPA petition.

We review summary judgment de novo, engaging in the same inquiry as the trial court. Citizens All. for Prop. Rights Legal Fund v. San Juan County, 184 Wn.2d 428, 435, 359 P.3d 753 (2015). Summary judgment is appropriate only if the supporting materials, viewed in the light most favorable to the nonmoving party, demonstrate " 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Hartley v. State, 103 Wn.2d 768, 774, 698 P.2d 77 (1985) (quoting CR 56(c)); Citizens All., 184 Wn.2d at 435.

As a general rule, a municipality does not have a duty to provide water or sewer service outside its corporate limits. Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn.2d 371, 381, 858 P.2d 245 (1993); Brookens v. City of Yakima, 15 Wn. App. 464, 465-66, 550 P.2d 30 (1976); Harberd v. City of Kettle Falls, 120 Wn. App. 498, 515-16, 84 P.3d 1241 (2004). Washington courts recognize two exceptions: (1) "where a municipality holds itself out as a public utility willing to supply all those who request service in a general area," and (2) where " 'the parties show a mutual intent to contract with each other.' " Brookens, 15 Wn. App. at 466; Harberd, 120 Wn. App. at 516 (quoting Irvin Water Dist. No. 6 v. Jackson P'ship, 109 Wn. App. 113, 122, 34 P.3d 840 (2001)); see also Fire Prot. Dist. No. 12, 122 Wn.2d at 381-82. " 'An implied contract comes about when through a course of dealing and common understanding, the parties show a mutual intent to contract with each other.' " Harberd, 120 Wn. App. at 516 (quoting Jackson P'ship, 109 Wn. App. at 122).

(1) Public Utility Exception

The public utility exception recognizes that a contract to supply water or sewer service may be found by implication " 'where a municipality holds itself out as a public

utility willing to supply all those who request service in a general area.' " Harberd, 120 Wn.2d at 516 (quoting Brookens, 15 Wn. App. at 466).

Figaro contends installation of the water and sewer stubs on the vacant lot on Yew Street Road and the undisputed fact that the City supplies water and sewer service to a significant number of other property owners on Yew Street Road establish the City holds itself out as willing to supply all those in the Yew Street Road area who request utility service.

The presence of a water and sewer service stub for future use does not manifest an intent to provide utility service to the vacant lot. "The mere presence or absence of a water main in front of the concerned property does not control the analysis." Harberd, 120 Wn. App. at 516. In Brookens, the court held:

> We do not find the presence or absence of a water main in front of a home, which main supplies other homes in the area, necessarily to be holding out of such an intent [to provide utility service]. On the contrary, adoption by the City of a 1968 resolution to supply water only when the user complies with the [City] General Plan for land use clearly manifests an intent not to supply the general area indiscriminately, nor expand any prior agreement with the [appellant]s.

Brookens, 15 Wn. App. at 466-67.

The requirement that a landowner annex as a condition to providing water and sewer service to properties outside the City limits is dispositive of the intent not to provide utility services to all landowners outside the City limits and in the urban growth area. BMC 15.36.010(B) unequivocally states that absent annexation or the necessity to protect public health and safety, the City will not provide "new direct retail water and/or sewer service to areas within the city's urban growth area." BMC 15.36.010(B)

13

states:

> The city will provide new direct retail water and/or sewer service to areas within the city's urban growth area only after the area's annex to the city. The city will not modify, extend, or expand direct retail water and/or sewer service in the city's urban growth area without annexation unless the city council determines that such modification, extension, or expansion is necessary to protect basic public health and safety and the environment.

## (2) Mutual Intent Exception

Figaro claims the undisputed evidence establishes a course of dealing and common understanding to provide sewer and water service. Figaro relies on installation of the sewer and water stubs on the property, the recorded "Statement of Intent to Collect Connection Fee" for the costs of installing the sewer main, issuance of the permit from the City in 2000 to install the water service stub, and an account number for water service to support his argument.

The City contends there is no evidence to show an implied contract to provide sewer service. We agree. There is no dispute the sewer stub was installed by Whatcom County, not the City, and there is no evidence of any communication between Figaro and the City to provide sewer service. The evidence shows Figaro did not pay sewer fees, execute a written contract, or apply for sewer service until after the City repealed the sewer service zone in 2011. Figaro did not comply with the requirement to obtain a sewer permit. He did not pay a latecomer fee or sign an annexation agreement.

Even if we assume that payment of the permit fee and installation of the water service stub created an implied contract to provide water service, the statute of limitations bars his breach of contract claim.

14

A contract claim accrues when there is a breach of contract. Schwindt v. Commonwealth Ins. Co., 140 Wn.2d 348, 353, 997 P.2d 353 (2000). In September 2000, the City issued a permit to Figaro to install a water service stub "for future use." Figaro did not submit a request for water service until 2007. Public Works denied the request because it was not consistent with the comprehensive plan, did not meet the annexation requirement, and did not meet the City code criteria. On March 3, 2008, the City Council unanimously denied Figaro's request to provide water service to the vacant lot. Figaro did not file his lawsuit alleging a breach of contract claim until November 2014. Under either a three-year statute of limitations or a six-year statute of limitations, the claim for breach of contract to supply water service to the vacant lot on Yew Street Road is barred.

In the alternative, Figaro claims the court erred in refusing to apply the doctrine of equitable tolling to allow a breach of an implied contract claim against the City for water service. Equitable tolling is a remedy that allows an action to proceed "when justice requires." Millay v. Cam, 135 Wn.2d 193, 206, 955 P.2d 791 (1998). The doctrine of equitable tolling is "an exception to the statute of limitations that should be used sparingly and does not extend broadly to allow claims to be raised except under narrow circumstances." In re Pers. Restraint of Bonds, 165 Wn.2d 135, 141, 196 P.3d 672 (2008). "The predicates for equitable tolling are bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff." Millay, 135 Wn.2d at 206.

The record does not support equitable tolling. There is no evidence that the City acted in bad faith, made false assurances, or that Figaro acted with due diligence. The

court did not err in refusing to apply the equitable tolling doctrine. See Douchette v. Bethel Sch. Dist. No. 403, 117 Wn.2d 805, 812-13, 818 P.2d 1362 (1991) (declining to equitably toll a statute of limitations where the plaintiff "had ample opportunity and time to pursue" claims).

In conclusion, the undisputed record establishes the City did not hold itself out as a public utility willing to serve all landowners outside the City limits in the urban growth area. There is no evidence of an implied contract to provide sewer service. Even if there was an implied contract to provide water service, the breach of contract claim is barred by the statute of limitations and the court did not err in denying the request to equitably toll the statute of limitations.

We affirm summary judgment dismissal of the breach of contract claim against the City.

WE CONCUR: